## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **RICHARD CRISS, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | **8:09CV387** |
| | ) | |
| vs. | ) | **FINDINGS AND** |
| | ) | **RECOMMENDATION** |
| **COUNTY OF DAKOTA, NEBRASKA, and** | ) | |
| **JAMES L. WAGNER and** | ) | |
| **RODNEY HERRON, in their official** | ) | |
| **and individual capacities,** | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' Motion for Recusal (Filing No. 91). The defendants filed a brief (Filing No. 93) and an index of evidence (Filing No. 92) in support of the motion. The plaintiffs filed a brief (Filing No. 99) in opposition to the motion. The defendants filed a brief (Filing No. 104) in reply. On April 8, 2011, the court held a hearing on the defendants' motion. A transcript (TR.) of the hearing was filed on April 15, 2011. **See** Filing No. 105.

### BACKGROUND

This is an action for discrimination in employment under 42 U.S.C. § 2000e (Title VII) and 42 U.S.C. § 1983 (Civil Rights Act). The plaintiffs are nine present and former employees of the Dakota County jail.[1] The defendant James L. Wagner (Wagner) was the Dakota County Sheriff and the defendant Rodney Herron (Herron) was the Chief Deputy who managed the Dakota County jail. **See** Filing No. 7 - Amended Complaint ¶¶ 15-18. The plaintiffs allege the defendants violated the plaintiffs' "civil rights by offering and granting promotions and other job benefits in exchange for sex; treating employees differently because of their gender; creating and maintaining a sexually hostile workplace;

---

[1] Three of the plaintiffs filed stipulations to dismiss all or some of their claims. **See** Filing Nos. 116, 118, and 119. The stipulations do not appear to affect the merits of the defendants' motion for recusal.

by engaging in arbitrary and capricious conduct . . . and by engaging in . . . other illegal and improper conduct. . . ." *Id.* ¶ 2.

On October 18, 2010, Chief Judge Bataillon granted the defendants' motions to dismiss with respect to the plaintiffs' substantive due process and conspiracy claims, but denied the motions in all other respects. **See** Filing No. 61. On November 1, 2010, Wagner and Herron, in their official capacities, and Dakota County, Nebraska (the County Defendants), filed an Answer denying liability for the allegations in the Amended Complaint. **See** Filing No. 62. Shortly thereafter, Wagner and Herron, in their individual capacities (Individual Defendants), also filed answers denying liability. **See** Filing Nos. 76 and 83.

On March 25, 2011, counsel for the parties held a telephone conference with the undersigned magistrate judge to discuss scheduling this matter to trial. However, no schedule has been set. During the conference, the court informed the parties that Chief Judge Bataillon's daughter, Aimee Bataillon, had been employed by the law firm Spencer, Fane, Britt & Browne (Spencer Fane). Spencer Fane had created a report (the Spencer Fane Report) comprised of investigation materials and an attorney's conclusions about the work environment at Dakota County's correctional facility. The Spencer Fane Report had been the subject of a motion for protective order in two cases related to the above-captioned matter. There are a total of four related cases filed by plaintiffs concerning the working environment at Dakota County's correctional facility. In addition to the above-captioned matter there are: ***Williams v. County of Dakota, Nebraska, et al.***, Case No. 8:09CV201[2]; ***Duncan v. County of Dakota, Nebraska, et al.***, Case No. 8:09CV277[3]; and ***Crutcher-Sanchez v. County of Dakota, Nebraska, et al.***, Case No. 8:09CV288[4].

---

[2] In this case the defendants have filed motions for summary judgment and trial is scheduled for October 17, 2011.

[3] In this case the defendants have filed motions for summary judgment and trial will be scheduled after resolution of those motions.

[4] In this case the defendants have motions for summary judgment and trial is scheduled for November 14, 2011.

After the court's telephone conference, the defendants filed the instant motion seeking Chief Judge Bataillon's recusal from the case. **See** Filing No. 91. The defendants argue Chief Judge Bataillon's impartiality may reasonably be questioned in this case because his daughter may have an interest that could be substantially affected by the outcome of the proceeding or is likely to be a material witness in the proceeding. *Id.* The defendants contend that because Aimee Bataillon was an associate at Spencer Fane, whose conduct and report may be contested issues in this matter, she may become a prospective witness. *Id.* Moreover, Spencer Fane is frequently retained by the defendants' insurer who has (1) specifically retained Aimee Bataillon in unrelated matters, and (2) has a direct financial interest in the outcome of the litigation. *Id.* Therefore, the defendants argue that, by extension, Spencer Fane and Aimee Bataillon have a financial interest in the outcome of the litigation. **See** Filing No. 93 - Brief p. 7. The defendants deny they filed the motion for recusal for any improper purpose, such as delay or judge shopping. **See** Filing No. 104 - Reply p. 4. Similarly, the defendants deny the evidence would suggest Chief Judge Bataillon might show bias for either party specifically, particularly where the Spencer Fane Report is protected work product and not in evidence. **See** TR. 27-30.

The plaintiffs argue there is no evidence in the record to support recusal. **See** Filing No. 99 - Response p. 3-4. Specifically, the plaintiffs contend there is no evidence suggesting Aimee Bataillon has any knowledge about the Spencer Fane Report or any other discoverable information. *Id.* Further, the plaintiffs assert that if Aimee Bataillon has information about Spencer Fane's general practices, such information is insufficient to raise a reasonable question about whether she would be a witness in this case or to question Chief Judge Bataillon's impartiality. *Id.* The plaintiffs argue any financial interest Spencer Fane may have in this lawsuit is also irrelevant because Aimee Bataillon is an associate, not a partner sharing profits in the firm. *Id.* at 5. The plaintiffs contend the evidence suggests the defendants filed the instant motion for some reason other than an appearance of impartiality because of earlier unfavorable rulings and, theoretically, any assumption of bias would likely favor the defendants, rather than the plaintiffs. *Id.* at 6-7; TR. 23. Finally, the plaintiffs suggest that even if this matter is reassigned to another judge, the related cases should not be reassigned because such reassignment would

cause unwarranted delay. **See** TR. 16-18, 23. In a related argument, the plaintiffs seek to review the Spencer Fane Report in an attempt to evaluate the likelihood of any bias that may stem from, or be suggested by, the report. **See** TR. 31-32.

## FINDINGS OF FACT

After a meeting held on January 16, 2007, Dakota County's Board of Commissioners hired Spencer Fane to conduct an investigation into the work environment at Dakota County's correctional facility. The decision to hire Spencer Fane came after the commissioners received a complaint about favoritism from the plaintiff Richard Criss (Criss), a male jailer at the correctional facility, and sought advice from Dakota County's insurer, the Nebraska Intergovernmental Risk Management Association (NIRMA). **See** Filing No. 92 - Ex. 1 Nelson Aff. ¶ 6.

NIRMA is a self-insurance pool with membership comprised of eighty counties within Nebraska. **See** Filing No. 92 - Ex. 1 Nelson Aff. ¶ 2. NIRMA often retains Spencer Fane to prepare and present materials on labor and employment law issues at conferences held for NIRMA members. *Id.* ¶ 3-4. NIRMA also sponsors a toll free Employment Law Help Line (Help Line) and retains attorneys from Spencer Fane to provide legal advice to callers on the Help Line. *Id.* ¶ 5. Craig L. Nelson, NIRMA's Executive Director, listed Spencer Fane as one of several firms who might assist Dakota County's Board of Commissioners investigate the correctional facility. *Id.* ¶¶ 1, 6.

Attorneys from Spencer Fane conducted the investigation from January 2007 until approximately July 2007. The attorneys working on the investigation were Mark McQueen, a partner at Spencer Fane, and Kelly Brandon, employed in an "of counsel" capacity at Spencer Fane. **See, e.g., *Williams v. County of Dakota, Nebraska, et al.*,** Case No. 8:09CV201, Filing No. 89 - Ex. 2 McQueen Aff. ¶ 7; ***Crutcher-Sanchez v. County of Dakota, Nebraska, et al.***, Case No. 8:09CV288, Filing No. 94-1 - Ex. 5 Interrogatory Response No. 2 (listing Kelly Brandon, Mark McQueen, and "possibly others within the Spencer Fane law firm" as individuals who obtained statements connected with the events in the complaint); Filing No. 102 - Ex. 1 McQueen Supp. Aff. and Ex. 2 Brandon Aff. As part of the Spencer Fane investigation, Criss was interviewed on January 17, 2007. **See**

Filing No. 92 - Ex. 2 Valentino Aff. ¶ 8; ***Crutcher-Sanchez v. County of Dakota, Nebraska, et al.***, Case No. 8:09CV288, Filing No. 94-1 - Ex. 5 Interrogatory Response No. 2. The plaintiffs Diana Moctezuma and Heather Shelby f/k/a Heather Skow also participated in the investigation and were interviewed on May 17, 2007. **See** Filing No. 92 - Ex. 2 Valentino Aff. ¶¶ 8-10; ***Crutcher-Sanchez v. County of Dakota, Nebraska, et al.***, Case No. 8:09CV288, Filing No. 94-1 - Ex. 5 Interrogatory Response No. 2. At the conclusion of the investigation Kelly Brandon and Mark McQueen created the Spencer Fane Report. The plaintiffs in two related cases sought production of the Spencer Fane report, however, the undersigned magistrate judge granted the defendants' motions for protection from production under the attorney-client privilege and the work-product doctrine. The plaintiffs in those cases did not timely object to the orders. The plaintiffs in this case also seek production of the Spencer Fane Report, however, no formal motion has been filed by either party associated with such production. The parties indicate it is uncertain whether, or to what extent, production of the Spencer Fane Report will be subject to dispute.

Aimee Bataillon is the daughter of Chief Judge Bataillon who is the District Court Judge assigned to this case. On March 29, 2011, Aimee Bataillon was also an associate attorney at Spencer Fane. **See** Filing No. 92 - Ex. 1 Nelson Aff. ¶ 4. Aimee Bataillon has been a speaker at NIRMA events "during the past several years." *Id.* Aimee Bataillon has assisted on occasion in fielding calls placed to the NIRMA Help Line. *Id.* ¶ 5. There is no evidence before the court about when Aimee Bataillon began her employment with Spencer Fane. Aimee Bataillon was not listed by any party in discovery disclosures as a witness in this case or someone likely to have discoverable information. The defendants describe her employment as a member of the firm's Labor and Employment Group, in which she is one of five attorneys, including Mark McQueen, handling employment litigation in the Omaha office. **See** Filing No. 93 - Brief p. 6. Furthermore, the defendants state,

> It is unknown at this time whether the Judge's daughter Aimee Bataillon has any direct involvement in or knowledge about the Spencer Fane investigation itself, but as a member of the

> firm's Labor and Employment Group she certainly has knowledge about the firm's practices with respect to the type of representation undertaken in the instant case.

*Id.*

## ANALYSIS

"Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge "shall also disqualify himself" if he (1) has a personal bias concerning a party, (2) has personal knowledge of disputed evidentiary facts, or (3) knows a person within the third degree of relationship to him has an interest that could be substantially affected by the outcome of the proceeding or is likely to be a material witness in the proceeding. 28 U.S.C. § 455(b). Mirroring the language of the federal statute, the Nebraska Revised Code of Judicial Conduct, § 5-301.2, § 5-302.2, § 5-302.4(B), § 5-302.11(A)(3), further requires a judge to avoid the appearance of impropriety, perform his duties fairly and impartially, and disqualify himself in the event a family member has influence over, or economic interest in, the matter in controversy. Additionally, the General Rules of the United States District Court of Nebraska (Nebraska General Rules) 1.4(a)(3)(A) and 1.4(a)(2) provide for random reassignment of a case due to personal disqualification of an assigned judge or other good cause. Further, absent good cause related cases are assigned to the same judge. **See** NEGenR 1.4(a)(4).

The court applies "an objective standard of reasonableness in determining whether recusal is required. Under § 455(a), disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *American Prairie Const. Co. v. Hoich*, 560 F.3d 780, 789 (8th Cir. 2009) (internal quotations and citations omitted). Accordingly, the court analyzes "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case . . . . and the existence of actual bias is irrelevant." *White v. National Football League*, 585 F.3d 1129, 1138 (8th Cir. 2009) (internal quotations and citations omitted). Because a judge's impartiality is assumed, "the party seeking disqualification bears the substantial burden of proving

6

otherwise." *White v. National Football League*, 585 F.3d 1129, 1138 (8th Cir. 2009) (**quoting** *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)).

Financial interest is defined as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party . . . ." 28 U.S.C. § 455(d)(4). "However, where an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest which reasonably brings into question a judge's partiality." *Sensley v. Albritton*, 385 F.3d 591, 600 (5th Cir. 2004). Accordingly, "an employment relationship between *a party* and a judge's son or daughter does not per se necessitate a judge's disqualification." *In re Kansas Public Emps. Ret. Sys.*, 85 F.3d 1353, 1360-61, 1364 (8th Cir. 1996) (emphasis added) (holding recusal not warranted where judge's daughter, a law student, had summer employment with a potential party, who then became a party, to the lawsuit). A salary interest as a law firm's associate is too remote to fall under this "financial interest" prohibition. *U. S. ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456, 463 (5th Cir. 1977) ("The 'financial interest' provision might apply if the district judge's son were a partner in the firm. But his status as an associate removes that fear.").

On the record before the court, the defendants fail to meet their burden to overcome the presumption of Chief Judge Bataillon's impartiality. The defendants, who are in the best position to determine Aimee Bataillon's potential involvement in the underlying facts, have failed to provide the court with more than speculation. The facts show that Chief Judge Bataillon's daughter worked for an unknown period of time as an associate at the law firm who conducted an investigation into some of the facts underlying the allegations in the complaint. The evidence shows two attorneys from the firm, neither of whom were Aimee Bataillon, worked on the Spencer Fane Report. There is no evidence Aimee Bataillon worked on anything associated with the Spencer Fane Report, was in any way involved in the investigation or even knows about it. Aimee Bataillon has not been listed as a potential witness or someone with discoverable information in this case. Moreover, Aimee Bataillon's employment with a firm who is retained by the insurer of one of the parties in this case does not constitute facts from which a reasonable person may question Chief Judge Bataillon's impartiality. Aimee Bataillon's relationship to this lawsuit cannot

justify any reasonable assumption that she may have an interest that could be substantially affected by the outcome of the proceeding. See *In re Kansas Public Emps. Ret. Sys.*, 85 F.3d at 1364 (noting a verdict against the defendant almost certainly would not "trickle down" to a low-level associate whose future was not contingent on success or failure of the party); **see also** *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1112-13 (5th Cir. 1980) (distinguishing a partner's interest in a case from a salaried associate's interest). Upon consideration,

### IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:

1. The defendants' Motion for Recusal (Filing No. 91) be denied.
2. The plaintiffs' request to review the Spencer Fane Report in connection with the defendants' motion be denied.

### ADMONITION

Pursuant to NECivR 72.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 1st day of June, 2011.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.